ROBERT H. WINBORNE and wife, ANNA F., *v.* CALEB WHITE, Adm'r of JONATHAN WHITE and others.

The guardian of A sells the land of his ward under an order of our late Court. of Equity, which is purchased by B, the mother of A. B intermarries with. C, and with her husband, conveys the land in trust to secure the payment of the purchase money. C afterwards becomes guardian of A, and directs the trustee to sell the land and to pay the purchase money, which is done, and C buys it. A brings suit for the land or for its value and for the rents, &c.: *Held*, that the only interest that A had in the land was as a security for her debt, and that the action could not be maintained.

CIVIL ACTION tried before *Watts, J.*, at the Spring Term, 1873, of the Superior Court of PERQUIMANS county.

I. The complaint alleges that in 1839 one Peter Parker died seized of a tract of land in Perquimans county containing about 325 acres, and leaving a widow, Elizabeth B., and one child, the *feme* plaintiff, Anna F.

II. The widow was allotted dower in the said land, and the remainder was sold under a decree of the Court of Equity of Perquimans county, upon proper proceedings had for that purpose, as the estate of the said Anna F.; at the sale the widow became the purchaser at the price of $2,105.35. The sale was confirmed, title made, and she executed her bonds for the purchase money to one William R. Skinner as guardian of said Anna F.

III. After her purchase the widow entered into a contract with one Small for the lease and cultivation of said land for five years. The net proceeds to be equally divided between herself and Small.

IV. Thereafter, about July, 1846, said Elizabeth intermarried with Jonathan White, the intestate of the defendant, Caleb, and upon the 11th of August of that year, she and her said husband duly executed to Nathan Winslow a conveyance of said land in trust, to apply all rents· and profits accruing from said contract with Small to the payment of the interest first, and then principal of the bond given by the said Elizabeth B., as aforesaid; and in case such rents and profits should prove insufficient, and payment of said bond should be required by suit or otherwise to sell said land, or so much as may be necessary, and with the proceeds pay off said bond.

V. N. R. Skinner, former guardian of the plaintiff Anna F. having surrendered his guardianship, the said Jonathan White was appointed guardian of the said Anna F. in his stead, and qualified as such at November Term, 1846, of Perquimans County Court.

VI. That during the continuance of the lease of Small large profits accrued, sufficient, as plaintiffs allege, to pay the annual interest on said bond, and greatly reduce, if not pay principal, which profits passed into the hands of said Jonathan, but were not applied by him to the purposes of the trust.

VII. That with intent to acquire to himself the title in in said land, and while the said bond was amply secured and no necessity of its collection existed, the said Jonathan by virtue of his powers as guardian, as aforesaid, caused the said trustee to sell the whole of said land for the payment of said bond; and at the sale, he, the said Jonathan, became the purchaser at the price of $3,150, and in payment thereof, surrendered and cancelled said bond, then amounting to $2,600, and executed his notes for the residue.

That at the time of said sale, the plaintiff, Anna F., was living with her friends at little or no expense, and there was no necessity of selling, and that no advantage accrued to her

estate from said sale; but it was made at the instance of said Jonathan and for his own benefit.

IX. That the said notes given by said Jonathan for the excess of said price over the said bond have not been paid.

X. That plaintiffs are advised that the said land is still at the election of said Anna F., her property subject only to the payment of the said notes, and that she now elects to take the said land.

XI. That after the said sale the said Jonathan during his life, and the defendants, after his death, have possessed and made large profits from said lands, which should be accounted for to plaintiffs.

XII. That said Jonathan died intestate in 1860; that the defendant, Caleb, one of his sons, administered on his estate, and he and the other defendants are his only heirs-at-law.

XIII. That plaintiffs intermarried 10th April, 1860.

XIV.. That the plaintiffs having no notice of the purchase of the said lands by the said Jonathan under the circumstances aforesaid, which they have only lately discovered after much labor and difficulty, and in ignorance of the right of the *feme* plaintiff, the said Anna F., to make her said election, brought their action against the said Caleb, as administrator of the said Jonathan, and against the sureties to his guardian bond, at —— Term, 18—, of Perquimans Superior Court, and obtained judgment for $    , thereon, some part of which said judgment still remains unpaid.

XV. That said Elizabeth died in 18—, leaving as her heirs-at-law, plaintiff Anna F., and defendant Jonathan.

The plaintiffs insist they are not concluded by their said judgment, and now demand judgment,

1. For an account of rents and profits which were received or ought to have been received from the said Small contract.

2. For an account of the purchase money and interest included in said judgment.

3. For an account of notes and profits made by the intestate Jonathan during his life, and by his heirs since.

4. That if the first account shows a sum sufficient to have discharged said bond, that said sale be declared void, and that the defendants convey said land to the heirs at law of said Elizabeth B.

5. That the defendants be required to convey the said land to plaintiffs.

The defendants admitting to be substantially true all the allegations of the complaint, except as they are controverted by the answer, allege—

I. That the intestate became guardian to the plaintiff, Anna F., at the request of the said Elizabeth B., and upon the insolvency of the former guardian, William A. Skinner.

II. That under the deed of trust to Winslow only the sum of $379.78 was received from the lessee, Small, and that this sum was accounted for by the defendant, Caleb, as administrator, and constituted a part of the plaintiff's judgment recovered on the guardian bond of the intestate, Jonathan.

III- That upon the expiration of said lease in 1848, the intestate, Jonathan, as guardian of the *feme* plaintiff, gave notice to the trustee, Winslow, to close said trust; and at the sale, at the request of, and to gratify the said Elizabeth B., became the purchaser. That to pay the price, he sold his own plantation, and of the proceeds invested a sum sufficient to pay off the bond of the plaintiff, Anna F., for her benefit. That the sale was made openly, and the price was universally admitted to be fair and just; and that the share of the plaintiff, Anna F., as one of the heirs at law of the said Elizabeth B., has been accounted for, and constitutes a part of the plaintiff's said judgment.

IV. That the amount of the judgment received by the plaintiff in the guardian bond aforesaid is $3,981.84, all of which has been paid except $1,044.39, and this sum has been tendered to plaintiff's and refused by them.

The case coming on to be heard, upon the complaint and answer, and the admissions of the parties, his Honor was of opinion, that the plaintiffs could not now elect to claim the land, inasmuch as upon their own suit they had recovered judgment upon the guardian bond and had received payment of the greater part of their judgment. His Honor also ruled that the guardian had the right to buy at the trustee's sale made for the purpose of paying a debt due his ward, and that registration of the trustee's deed affected the plaintiffs with notice, who after nine years' acquiescence had elected to sue on the bond.

The Court ordered a reference to the clerk of the Court to report whether the rents due under the Small contract, after the execution of the deed in trust had been applied to the payment of the note due the ward by the said Elizabeth B.; and if not, the proportion of such rents, with interest due to the *feme* plaintiff.

The plaintiffs excepted to the ruling of the Court, for that:

1. Evidence was not allowed to be heard to explain the circumstances attending the beginning and prosecution of the suit on the guardian bond, as set out in the complaint.

2. The Court held the plaintiff concluded by their act in bringing their said action, and not at liberty to assert any claim to the land in consequence thereof.

3. The Court held that registration of a deed was notice to plaintiffs, and that an acquiescence thereafter barred any claim to the land, and no evidence was admissible to account therefor.

From the judgment the plaintiffs appealed.

*Gilliam & Pruden,* for appellants:

The guardian, White, upon his intermarriage with his wife, became thereby personally responsible for the debt, which security was added to the conveyance of the land itself. And the land, as the sale shows, was ample security for the debt. There was no necessity for enforcing payment, and the trust fund was used by the guardian in the purchase of the property for himself, and the most of the purchase money paid thereby. His was a breach of official duty and a misapplication of the trust funds, which could be afterwards sanctioned by the ward, and the property thus acquired with her money claimed, or waiving this right, she could charge his bond with the moneys thus converted. Her equity to follow the investment and claim the property her money had been used to pay for, is thus clear and unquestionable. Lewin on Trusts Marg. p. 290. Has this right been forfeited and the election determined? So ruled the Court.

An election to be effectual must be made with a knowledge of one's rights and with an intention to elect. 1. Leading cases in equity in *Streatfield* v. *Streatfield,* p. 321; notes, p. 249. What will be conceded election? A receipt of a legacy for three years does not preclude an election made in ignorance of one's rights. *Wake* v. *Wake,* 1 Ves. Jr. 335; same for five years. *Reynard* v. *Spence,* 4 Beav. 103.

Infants may elect at majority. Married women after enquiry by the master. 1. Leading cases in equity, p. 303; *McQueen* v. *McQueen,* 2 Jones Eq. 16; 2 Story's Eq., sec. 793 and sec. 1,097. Story says (last cited section): Before any presumption of an election can arise, it is necessary to show that the party acting or acquiescing was cognizant of his rights. When this is ascertained affirmatively it may be further necessary to consider whether the party intended an election; whether the party was competent to make an

election; for a *feme covert* an infant or a lunatic will not be bound by an election, &c.   *West* v. *Sloan,* 3 Jones Eq. 102; *Young* v. *McBride,* 68 N. C. Rep. 532.

RUFFIN, J.: This case is "not at all like the cases of dealing with trust funds by trustees, executors, guardians, factors and the like, in which the owners of the fund may elect to take either the money or that in which it was invested." *Campbell* v. *Drake,* 4 Jones Eq. 96.

*Moore & Gatling,* contra.

I. This case bears no resemblance to that class of cases in which a trustee undertakes to buy the trust property for his own benefit as in *West* v. *Sloan,* 3 Jones Eq. 103; because the land in question had ceased to be the property of the *feme* plaintiff, having been sold by order of the Court of Equity, and bought by Mrs. Elizabeth B. Parker, a stranger to the proceeding and to the guardianship long prior to the guardianship of the intestate, Jonathan. The validity of her purchase is not impeached.

View our case as if a debt secured by deed in trust of land belonging to the debtor who is some third party, had come into the guardian's hands as the estate of his ward, and upon failure of the debtor to pay the interest promptly, or for other good cause, the guardian had required the trustee to make sale, and upon such sale had purchased the land openly and at a fair price, paying therefor with his own money, and in his final accounting fully satisfying his ward for her debt and all accrued interest. For such a view is warranted by the complaint alone without reference to the explanation contained in the answer, there being no allegation that the guardian paid for the land with the ward's money, or that there was collusion between the trustee, Nathan Winslow, and the guardian. Upon the principles

announced in *Simmons* v. *Hassell*, 68 N. C. Rep. 213, it is plain that the plaintiff has no election.

II. The only charges brought against the guardian in the complaint are,

1st. An intention to buy the land for himself.

2d. That there was no necessity to change the investment.

If we admit the first charge, does it sustain the plaintiff's views of the case? We take it, "the intention to buy for himself" is very plainly evidenced by the fact that he did buy for himself. He intended to buy. He did buy. He had a right to buy. He stands upon higher ground than that claimed for him in the view just before presented. His wife owns the equity of redemption in the land conveyed to Winslow, and he himself is individually liable for the debt. Has not the guardian a right to have the debt paid before his wife's land is entirely consumed by the debt? and if his wife does not object to the sale and purchase by him, can the plaintiff, whose debt has been fully paid, object?

The defendants insist that the propriety of collecting the debt should be left to the sound judgment of the guardian in all cases where it is not alleged that injury has resulted to the ward from such collection. Such seems to be the rule established in *Gary* v. *Cannon*, 3 Ired. Eq. on page 69.

III. The real complaint seems to be at last, that the guardian did not permit the debt to stand on interest until it had eaten up his wife's land, and then buy in the land for his ward. There are three excellent reasons why he did not choose to adopt this cause, to-wit:

1st. While the law exacts of the guardian that he shall display both good faith and ordinary prudence in the management of his ward's estate, it does not require him to sacrifice his own interests, or those of his wife for the benefit of the ward, especially when that benefit is purely a matter of speculation.

2d. To have bought the land for his ward, instead of sell-

ing the land and having the ward's debt paid, would have been such a change of investment, such a speculation, as would have rendered him liable to his ward, in case, from any reason, the speculation had proved less valuable than the debt and interest.    *Whashington* v. *Emeny,* 4 Jones Eq., page 36.

3d. The debt due his ward was the debt of his wife for which his marriage made him responsible.  If he had deferreed the collection with the debt constantly increasing, and the land in the hands of a trustee, it might have soon happened, and no doubt would have happened, that by reason of the increase of the debt, and the deterioration of the land, it would have failed to sell for enough to pay the debt, and the guardian would have been personally liable for the deficit.   As it was, the security did not seem to have been very ample for the price, which is no where alleged to be less than the value, was $3,100, and the debt $2,600.

If, under such circumstances, the guardian collects a debt secured by his wife's land, and for which he is personally responsible, and accounts for every cent so collected, will the Court lightly declare that he acted in bad faith?

IV. To put the plaintiff's case in its strongest light, let us admit (for argument sake) that the guardian paid for the land only by surrendering his ward's bond, and that the plaintiff had the right to elect to take the land. Then this election must be made in reasonable time, and after "the closing of the trust," a short time will be reasonable time; for this right of election is not "an estate in equity, but a mere right," and the statute of presumption applies.  *Davis* v. *Cotton,* 2 Jones Eq., 435; *Haskins* v. *Wilson,* 4 Dev. & Bat., 243; *Simmons* v. *Hassell,* 68 N. C. Rep., 213.

V. But even before the closing of the trust by the judgment against the guardian and its satisfaction, the plaintiff, Anna F., had no such right of election.  Ours is totally unlike any case in which such a right has been held to exist.

It was not a sale by a guardian to himself. It was not a purchase of the wards property by the guardian. It is not a purchase by the guardian of property for which he paid his ward's money. But is only a purchase by him with his own money of his wife's property, which had been conveyed to a trustee to secure a debt due his ward, for which he was personally responsible, and for which he has already fully assented.

VI. There is no error in his Honor's ruling that the registration of the deed from the trustee affected the plaintiff's with notice. In *Davis* v. *Cotton*, 2 Jones Eq., 435, " possession of the property " was said to be sufficient to require inquiry. Is not possession under a registered deed equally so ? The *feme* plaintiff attained her majority before marriage. The subsequent coverture is not a disability.

RODMAN, J. The principle is admitted, that if a guardian use the money of his ward to purchase land for himself, she has an election when she comes of age to take the money or the land. It is founded on public policy, and is intended to prevent guardian from speculating with the trust fund, by assuring them that though they may lose, they can never profit by the speculation. But that principle has no application to the present case. The material facts are these:

The land belonged to Peter Parker, and upon his death it descended, subject to the donor of his widow, Elizabeth, to his only heir, the plaintiff, Anna. Upon the petition of her guardian, Skinner, the land was sold under a decree of the Superior Court, and purchased by the widow, who gave her note for the price. She afterwards married Jonathan White, who thus became bound for the debt. White and wife then duly conveyed the land to Winslow, in trust to secure the debt. Afterwards White became guardian to Anna, and at his request, Winslow sold the land and he purchased, for a price somewhat greater than the debt to

his ward, and thereupon his wife's bond to Skinner, as guardian, was cancelled.

It is clear that White could at any time have paid off his wife's debt to his ward, as well after as before it was made a lien on the land. What else did the sale, through the trustee and the purchase by him amount to so far as the ward is concerned except that? It is true, it also extinguished his wife's estate, but that was done by her consent lawfully signified by the execution of the deed in trust. Probably the whole purpose of the deed in trust was to relieve him from liability for her debt and compel its payment out of her land for the purchase of which it was contracted. And this purpose was a legitimate one. It may be assumed that White, immediately on cancelling his wife's note to his ward, substitutes some other security for it, because it was his duty to do so, and the contrary is not alleged. The ward never had any interest in the land, except as a security for her debt, and she cannot complain that the debtor extinguished that security by paying the debt to the guardian, who safely re-invested the money. That the debtor and the guardian were one person can make no real difference. His being guardian did not deprive him of the right to pay his wife's debt. If no sale had taken place, and the guardian had annually expended the interest of the debt for the support of the ward, or had invested it for her, the principal of the debt would still be a lien on the land; but could the ward, *as such,* and without reference to what would have been her rights as heir to her mother, have claimed anything beyond the debt? Clearly not, and she can claim no more now, notwithstanding her expectancy as heir to her mother was cut off by her mother's sale of her estate.

In our opinion, there is no case for election, as the plaintiff never had any right to anything but the money. It is

admitted that she has recovered a judgment for that, and that it has been paid or tendered to her.

In any view of the case, it is difficult to see what claim the plaintiff, Anna, has to the rents of the land paid to her mother before her marriage with White, but after her purchase of the land. The land and its profits were exclusively the property of the mother; the daughter's right was to the note and interest.

The judgment below is reversed, and the action is dismissed.

PER CURIAM.                         Judgment reversed.